# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KENYATTA ERKINS,

                     Petitioner,           :    Case No. 1:14-cv-410

      - vs -                              Chief Judge Susan J. Dlott
                                         Magistrate Judge Michael R. Merz

MICK R. OPPY, Warden, Correctional
  Reception Center,
                                      :
                     Respondent.

---

# REPORT AND RECOMMENDATIONS

---

        This habeas corpus case was brought *pro se* by Petitioner Kenyatta Erkins to obtain relief from his convictions on robbery related offenses in the Hamilton County Common Pleas Court and his consequent sentence to imprisonment in Respondent's custody (Petition, Doc No. 1, ¶¶ 1, 3, 5, PageID 1).[1]  He pleads the following grounds for relief:

> **Ground One:** Erkins convictions are based on insufficient evidence.
>
> **Supporting Facts:** Erkins was convicted on all counts when the evidence was insufficient to sustain the conviction.
>
> **Ground Two:** Due Process violation in use of an impermissible suggestive identification procedure.

---

[1] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page.  The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference.  (E.g., Defendant's Motion to Dismiss, Doc. No. 27, PageID ___.)  The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy.  Therefore, nonconforming filings will be stricken.

> **Supporting Facts:** Prosecutor presented a single photograph of defendant to victim two weeks before trial stating "These are the guys up for trial" and prior to that there was no prior line-up presented to victim in which victim had already identified defendant.

> **Ground Three**: Due Process violation for trial court changing already journalized verdict.

> **Supporting Facts:** Trial court changed its verdict after announcing verdict & journalizing exactly what was announced. The record showed that it was not a clerical error but simply an error in the trial judge's judgment.

(Petition, Doc. No. 1, PageID 5, 7, 8.)

**Procedural History**

Erkins was indicted with his girlfriend, Amy Hoover, and with Ugbe Ojile for a series of robberies involving patrons of gambling casinos in Indiana. The indictments were returned in two separate cases filed in the Hamilton County Common Pleas Court, Cases No. B-1006797 and B-1007149. After motions to suppress were denied, Erkins waived a jury trial and the cases were tried jointly to Hamilton County Common Pleas Judge Nadine Allen. Erkins was convicted of two counts of robbery and one of aggravated robbery in Case No. B-1006797 and of five counts of aggravated robbery, three counts of complicity to robbery, and one count of felonious assault in Case No. B-1007149.

Erkins appealed to the First District Court of Appeals which affirmed in part and reversed in part. *State v. Erkins,* 2012-Ohio-5372, 2012 Ohio App. LEXIS 4712 (1st Dist. Nov. 21, 2012). The Ohio Supreme Court declined to exercise jurisdiction over an appeal. *State v. Erkins*, 135 Ohio St. 3d 1414 (2013). Although Erkins filed a petition for post-conviction relief under Ohio

Revised Code § 2953.21, he did not appeal from the trial court's denial of that petition. Pursuant to remand on the direct appeal, Erkins was re-sentenced in Case No. B-1006797. An *Anders* brief was filed on appeal, the re-sentencing was affirmed, and Erkins did not appeal to the Ohio Supreme Court.

On May 16, 2014, Erkins filed his timely habeas corpus Petition in this case (Doc. No. 1). On Magistrate Judge Litkovitz's Order (Doc. No. 2), the Warden filed a Return of Writ (Doc. No. 6) and the record of proceedings in the Ohio courts (Doc. Nos. 6-1, 7, 8, 9, & 10). Erkins filed his Reply September 22, 2014. The case was transferred to the undersigned for report and recommendations as part of the regular re-balancing of workload among the Western Division Magistrate Judges (Doc. No. 14) and case became ripe for decision on the filing of the trial deposition of victim Kiran Kumar Racherla (Doc. No. 15).

# Analysis

## Ground One:  Conviction upon Insufficient Evidence

Erkins claims in his First Ground for Relief that he was convicted on insufficient evidence. He does not identify in the Petition which convictions this claim relates to, but in his Reply (Doc. No. 11, captioned by Erkins as Response to Return of Writ) he identifies those convictions and argues them separately. *Id.* at PageID 1865-81. The Warden concedes this Ground for Relief is preserved for merit review in habeas corpus (Return, Doc. No. 6, PageID 36-37). After reciting the generally applicable law, the Court considers these convictions as separate sub-claims below.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the

4

> evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(*per curiam).*

The First District Court of Appeals considered this Ground for Relief on direct appeal. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the

5

United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

**Subclaim One: Count 2 of Case No. B-1006797 (Robbery of Victim Kyle Ingram)**

Before reaching the specific claims relating to Officer Ingram, the First District found the following relevant background facts:

### I. The Investigation

 [*P2] The record shows that the Cincinnati Police Department and other local police agencies had received a number of reports from local residents who had been followed home and robbed after gambling at the Hollywood Casino (formerly Argosy) and Grand Victoria Casino in Lawrenceburg, Indiana. The various police agencies formed a task force to apprehend the perpetrators. After many hours of viewing surveillance video from the casinos, police focused their attention on Erkins and co-defendant Ugbe Ojile. Police officers eventually obtained a warrant to put a GPS tracking device on a dark green Dodge Magnum that Erkins frequently drove. They also obtained a warrant to record the cell phone conversations between Erkins and Ojile.

 [*P3] Police discovered that Erkins and Ojile used the same method of operation in each case. Erkins would go into the casino and look for victims who were carrying large amounts of cash, and who he and Ojile believed would be easy targets. They often targeted gamblers who appeared to be Asian because they believed those individuals would be less likely to call the police. Ojile would wait in a car outside the casino because he had been banned from entering the Hollywood. Erkins would call Ojile and discuss specific "targets." They would wait for the "targets" to leave and follow them home. When the victim got out of his or her car, they would approach the victim at gunpoint and steal the victim's money and other valuables. Erkins's girlfriend, Amy Hoover, also participated in a few of the robberies.

 [*P4] On October 7, 2010, police officer Kyle Ingram was

working undercover in the Hollywood Casino, posing as an elderly gambler. He walked around slowly with a cane, and when he saw Erkins walking past him, he pulled a large amount of cash out of his pocket and started counting it. Erkins saw him and called Ojile to report that he had a "target."

 [*P5]  When Ingram left the casino, Erkins followed him to the parking lot. Ingram got into his van and left. Erkins got in the Dodge Magnum with Ojile and followed Ingram's van. Ingram left the highway on a predetermined exit and pulled into a gas station. The Magnum pulled into the parking lot of a nearby Waffle House. Police surrounded the car and arrested Erkins and Ojile.

 [*P6]  Police searched the Magnum and found a backpack that contained a .40-caliber Glock handgun, a live round of ammunition, and a BB gun. They also found three cell phones, a black hooded sweatshirt, camouflage gloves, Ojile's personal papers, and papers belonging to one of the robbery victims. In the trunk, they found duct tape that was used to tie up one of the robbery victims.

 [*P7]  Police also executed a search warrant at the apartment where Ojile and his girlfriend, Nikki Williams, lived. They found a .40-caliber Glock Magnum handgun with a magazine containing 11 rounds of ammunition, as well as additional .40-caliber ammunition. They also found a driver's license, a bank card and a social security card belonging to one of the robbery victims.

                    * * *

 [*P40]  The relevant inquiry, when reviewing the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offenses proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Russ*, 1st Dist. No. C-050797, 2006 Ohio 6824, ¶ 13.

 [*P41]  R.C. 2911.01(A)(1), aggravated robbery, provides that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or the offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.02(A)(1), robbery, provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the

attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person, or under the offender's control."

 [*P43]  Erkins also argues that the state failed to prove the three counts of complicity to robbery, which were the counts involving Boogher, Li and Quach, and Ingram. He makes much of the fact that the theft offenses in these counts were not completed. He argues that he and Ojile did not take any action that would have risen to the level of an attempt or an actual theft offense. We disagree.

 [*P44]  Robbery under R.C. 2911.02(A)(1) is "an offense which itself prohibits an attempt." *State v. Still*, 11th Dist. No. 93-L-195, 1994 Ohio App. LEXIS 5506, *5 (Dec. 19, 1994).  A criminal attempt occurs when an offender "purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), paragraph one of the syllabus, overruled on other grounds, *State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (1977). A substantial step involves conduct that is "strongly indicative of the actor's criminal purpose." *State v. Andrews*, 171 Ohio App.3d 332, 2007 Ohio 2013, 870 N.E.2d 775, ¶ 78 (1st Dist.), quoting *Woods* at paragraph one of the syllabus. This standard focuses on the defendant's overt acts that convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention to prevent the crime when the criminal intent becomes apparent. *Woods* at 132; *Holmes* at ¶ 19.

 [*P45]  R.C. 2923.03(A)(2), the complicity statute, states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * aid or abet another in committing the offense." To aid or abet is to assist or facilitate the commission of a crime, or to promote its accomplishment. *State v. Johnson*, 93 Ohio St.3d 240, 2001 Ohio 1336, 754 N.E.2d 796 (2001), syllabus; *State v. Holmes*, 181 Ohio App.3d 397, 2009 Ohio 1241, 909 N.E.2d 163, ¶ 22 (8th Dist.); *Russ*, 2006 Ohio 6824, at ¶ 18.

　　　　　* * *

 [*P47]  The same is true of the count in which Ingram was the intended victim. Erkins contends that the evidence showed only that he and Ojile simply had stopped at the same exit as Ingram. We disagree. Their cell phone conversations showed that they had specifically targeted Ingram as a victim. Erkins had followed him

> out of the casino. He and Ojile then followed Ingram's car on the highway until he got off at the exit, and they parked near where Ingram had parked. Thus, they took substantial steps showing that they intended to rob Ingram. It did not matter that the object of their intent was factually or legally impossible if they could have committed the offense had the circumstances been what they believed them to be. See *Andrews*, 171 Ohio App.3d 332, 2007 Ohio 2013, 870 N.E2d 775, at ¶ 80.

*State v. Erkins,* 2012-Ohio-5372, 2012 Ohio App. LEXIS 4712 (1st Dist. Nov. 21, 2012).

In deciding this claim, the First District applied the correct federal standard from *Jackson* as it is embodied in Ohio law in *State v. Jenks, supra*. Erkins argues the application is unreasonable because no robbery was completed as to Kyle Ingram (Reply, Doc. No. 11, PageID 1867-69). He argues that he and co-defendant Ojile just happened to get off the Interstate at the same exit as Ingram and went to a Waffle House close to the gas station at which Ingram stopped. Erkins notes that this place of business is "just miles from Ojile's residence" and that neither he nor Ojile approached Ingram, hid and waited for him, or made any effort to interact with him before they were arrested. *Id.* at PageID 1868. The arresting officer testified no robbery took place and he only arrested them on orders from his supervisor. *Id.*

Under the Fourteenth Amendment, it is the States which define the elements of crimes. *In re Winship*, 397 U.S. 358 (1970). The Due Process Clause requires them to prove each of those elements beyond a reasonable doubt. The point made by the First District in this case is that Ohio, following the Model Penal Code of the American Law Institute, has made the offense of robbery to include attempted robbery and then includes within attempts any act which an offender "purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *State v. Erkins,* 2012-Ohio-5372, ¶ 44, 2012 Ohio App. LEXIS 4712 (1st Dist. Nov. 21, 2012), *quoting State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus, overruled on

other grounds, *State v. Downs*, 51 Ohio St.2d 47 (1977).

It is true that Erkins and Ojile did not "complete" the robbery of Ingram in the sense of actually taking money from his person by force.  But they took a number of substantial steps in the process:  targeting him in the casino, following him a considerable distance on the highway, exiting when he did, and equipping themselves with the tools for committing an armed robbery.

Because there was adequate proof of intent and of substantial steps taken to carry out the robbery, the First District's decision on Subclaim One is not an objectively unreasonable application of *Jackson v. Virginia*, supra.


**Subclaim Two:  Counts 22, 28, and 29 of Case No. B-1007149 (Complicity as to Victims Alan Boogher, Michael Li, and Tony Quach**


As to these three victims, the First District made the following findings:

> **[*P46]**  In the cases of Boogher and Li and Quach, the evidence showed that Ojile and Erkins, acting in concert, had targeted them as their intended victims. One of them followed their victims out of the casino, consistent with the modus operandi in the other robberies. They followed the victims' cars, but were prevented from actually committing the theft offense. Thus, the evidence showed they took substantial steps showing their criminal purpose to rob the victims. They would have carried out the underlying theft offenses had they not been prevented from doing so. Thus, there was sufficient evidence to support the complicity to robbery convictions involving those victims.

State v. Erkins, 2012-Ohio-5372, 2012 App. LEXIS 4712 (1st Dist. Nov. 21, 2012).

As with Kyle Ingram, Erkins argues that no robbery was actually completed (Reply, Doc. No. 11, PageID 1869-74).  He claims he was convicted

> on all these counts simply because a police officer believes he might have been following these individuals while leaving the

10

> casino for the purpose of committing robberies  There was
> absolutely no evidence to show that those were his intentions, no
> action from him that rose to the level of an attempt to commit any
> crime, and no supporting or corroborating evidence to support the
> police officers' suspicion besides what the officer believed were
> his intentions.

(Reply, Doc. No. 11, PageID 1872.)  This argument ignores the fact that the officers were,

pursuant to warrant, intercepting cellphone conversations between Erkins and Ojile in which

they announced their intent by targeting victims.  As with Ingram, there is adequate proof of

intent plus substantial steps taken to carry out the intent.  Subclaim Two is without merit for the

same reason as Subclaim One.


**Subclaim Three:  Count 3 of Case No. B-1006797 First Aggravated Robbery of Michael Weisbrod**

Michael Weisbrod, a professional gambler, was robbed on two separate occasions as part

of this scheme.  The first time happened when he was lured to the basement of the building in

which he lived by the lights going out in his apartment; he assumed it was a circuit breaker since

neighbors still had lights.  When he reached the basement it was completely dark.  He was set

upon by two robbers, a man and a woman, and tied up.  The man held him captive while the

woman went to his apartment to look for the gambling proceeds.  She was unsuccessful in

finding it the first time and, after threatening Weisbrod with a gun, found the money.

Erkins' girlfriend, Amy Hoover, was the female co-perpetrator of this offense.  She

testified at trial and identified both Erkins and Ojile as having been there.  Erkins claims, as Ojile

did in his own habeas corpus case,[2] that Ojile had an ironclad alibi that he had flown to New

York at the time.  Ojile admitted to another witness in his trial that the alibi was fraudulent, but

---

[2] *Ojile v. Oppy*, Case No. 1:13-cv-844.

11

even if the state court had not rejected Ojile's alibi, it does not exonerate Erkins.

Erkins criticizes the state court for having accepted Hoover's word that there were two male perpetrators over that of Weisbrod himself and Detective Moy who investigated the robbery.  The Moy reference is a red herring:  Moy never purported to be an eyewitness and only testified to what Weisbrod told him.  The more important point is Hoover's credibility was for the trier of fact to consider.  A habeas corpus court is not to re-weigh the evidence in considering a sufficiency of the evidence claim.  *Jackson,* 443 U.S. at 319.


**Subclaim Four: Count 11 of Case No. B-1007149 (Second Robbery of Michael Weisbrod)**


The trial court found that Erkins and Ojile, this time without Hoover, robbed Michael Weisbrod a second time on April 3, 2009.  The First District found, based on Weisbrod's testimony, that the area where the robbery happened outside Weisbrod's home was well-lit and he got a good look at them, telling the police afterwards he would be able to identify them if he saw them again.  *State v. Erkins, supra*, ¶ 16.  The parties agree that there was no pre-trial line-up to see if Weisbrod could identify Erkins.  Instead, having been alerted by a friend, Weisbrod viewed news coverage of the arrest of Hoover, Erkins, and Ojile and then identified Hoover as the woman who had knocked on his door before the first robbery and Erkins and Ojile as the perpetrators of the second robbery.  *Id.*

Weisbrod testified at trial via video feed and identified both Erkins and Ojile in that manner.  Erkins argues this identification was unreliable because the prosecutor had shown Weisbrod a single photograph of each of the co-defendants about two weeks before trial.  Whether this identification was impermissibly suggestive in violation of Erkins' Fourteenth

Amendment rights is the subject of his Second Ground for Relief.  As far as is relevant to this

Subclaim, Weisbrod did make the identification and whether or not to believe him was a matter

of credibility for the trier of fact.  In this case, also, that trier was an experienced trial judge used

to weighing eyewitness identifications carefully.  Subclaim Four is without merit.

### Subclaim Five:  Counts 17 and 19 of Case No. B-1006797 (Robberies of Bovang Eab and Sitangshu Das)

As to the robberies of Bovang Eab and Sitangshu Das, the First District found the

following facts:

**B. Bovang Eab**

[*P17]   Bovang Eab, a Cambodian native, left the Hollywood Casino with $2,000 in the early morning hours of June 28, 2010. He drove to his brother's and sister's house in Madeira. He parked his car a few houses away. When he got out of his car, an African-American man, wearing a hood and wielding a gun, pushed him. Another man slammed Eab's head to the ground. The two men stole Eab's money, wallet, car keys, cell phone, credit card, identification card, and an ATM receipt. They then left the scene in a four-door, dark-colored sports car. Eab could not identify his assailants, but surveillance tapes showed Erkins following Eab as Eab left the casino on the night of the robbery.

**C. Sitangshu Das**

[*P18]   On August 15, 2010, Sitangshu Das, a native of Bangladesh, went to the Hollywood Casino to play poker. He left for home in the early morning hours. As he drove down his street, Das noticed a dark-colored car following him. When he pulled into his driveway, the car pulled into a neighbor's driveway a few houses away.

[*P19]   Das saw a man get out of the car and walk slowly towards him before disappearing from Das's sight. As Das got out of his own car to go into the house, a six-foot African-American man wearing a black mask, black gloves, and dark clothes

13

approached him. Das ran from the man, and the man chased after him.

[*P20]  The man caught Das and pushed him to the ground, dislocating his fingers. The attacker ordered Das to empty his pockets. Das told him that he did not have anything with him. Das's cell phone and keys fell out of his pockets, and his attacker stole those items and fled. Das went to the hospital to be treated for his injuries. When he returned home, his car was missing. It was later found about a block from his home. Das discovered that his check card and a small amount of cash were missing from the car.

[*P21]  Das later identified the Dodge Magnum that Erkins had been driving as the car that had followed him. Surveillance tapes from the casino showed Erkins following Das as he left the casino on the night of the robbery.

*State v. Erkins,* 2012-Ohio-5372, 2012 Ohio App. LEXIS 4712 (1st Dist. Nov. 21, 2012).  Before the First District, Erkins argued about inconsistencies in witness testimony, which the court of appeals found went to weight of the evidence rather than sufficiency.  *Id.*  at ¶ 42.  Erkins also argued there was no physical evidence to connect him to these crimes.  The First District found, without citation, that "[t]hat assertion is not supported by the record" and in any event there is no requirement of physical evidence corroboration.  *Id.*

In his Reply here, Erkins claims Officer Kinney's identification of him from surveillance tapes was "wrong" and just Kinney's "personal opinion."  (Reply, Doc. No. 11, PageID 1879.) He asserts neither victim "identified his vehicle as the car they observed fleeing the scene after any one of these robberies."  *Id.*  Erkins claims victim Eab identified a black Dodge as the getaway car, citing Trial Tr. p. 743.  Actually at that point Eab said the two perpetrators got into a dark four door car.  Erkins claims Das could not identify either the make or the model of the car involved, citing Trial Tr. p. 634, which is an accurate characterization of his testimony. However, Erkins points to no testimony undermining the finding of the First District that Das

14

**later** identified Erkins' vehicle.

As held by the First District, these are minor inconsistencies in testimony which go to the weight of the evidence.  Erkins has not shown by clear and convincing evidence that the First District's conclusion are based on an unreasonable determination of  the facts, given the evidence of record.  Subclaim Five is therefore also without merit.

**Subclaim Six:  Count 26 of Case No. B-1007149 (Robbery of Kiran Racherla)**

Like the other victims of this robbery scheme, Kiran Racherla was robbed at gunpoint at his home after having gambled at the Hollywood Casino and driven home.  When he resisted, he was struck three times in the head with a gun, requiring hospital treatment.  When Erkins and Ojile were arrested together, a gun they had taken from another victim, Daniel Duncan, was found in the car in which they were arrested with Racherla's DNA on the gun.  *State v. Erkins,* 2012-Ohio-5372, ¶¶ 22-25, 2012 Ohio App. LEXIS 4712 (1st Dist. Nov. 2012).

Erkins claims this is insufficient evidence because he was "misidentified as the individual that appeared to be leaving the casino" where Racherla had been gambling before the robbery (Reply, Doc. No 11, PageID 1880).  However, he never proves by clear and convincing evidence that it was a misidentification.  He asserts the State had evidence that exonerated him, to wit, output from a GPS tracker on his car which shows he was nowhere near the crime scene and a GPS ping on his phone which shows the same thing.  *Id.*  at PageID 1880-81.  He refers to "Defense Exhibit B," but gives the Court no indication where that can be found; no copy is attached to the Reply.  *Id.*  at PageID 1881.  He claims "the state court made wrong factual findings indicating that the state presented cell phone records showing that Erkins' cell phone

was in the same area as the robbery."  *Id.*  However, he never points to any portion of the record refuting that factual finding by the First District.

A habeas petitioner who asserts an unreasonable factual determination by the state courts must prove that assertion by clear and convincing evidence in the state court record.  28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011).  Erkins has failed to meet this demanding standard and his Subclaim Six is therefore without merit.

In sum, Erkins has not established merit in any of his subclaims on the First Ground for Relief.  That Ground should therefore be dismissed with prejudice.

**Ground Two:  Use of an Impermissibly Suggestive Identification Procedure**

In his Second Ground for Relief, Erkins argues that the prosecutor's presentation of a single photograph of each of the co-defendants to victim Michael Weisbrod constituted an impermissibly suggestive identification procedure.   The Warden asserts this Ground for Relief is procedurally defaulted because Erkins never filed a motion to suppress the identification on this basis (Return, Doc. No. 6, PageID 38-40).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406

(6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that

17

> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio has a procedural rule that is applicable in these circumstances, to wit, Ohio R. Crim. P. 12(C)(3) which requires that motions to suppress evidence on the ground that it was illegally obtained must be filed before trial.  The First District enforced this rule against Erkins by reviewing this claim only for plain error.  *State v. Erkins, supra*, ¶ 62. A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir.  2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

The Court agrees with Erkins that his procedural default of this claim is excused by the State's failure to disclose this incident prior to trial.  Cause must be something external to the petitioner, something that cannot fairly be attributed to him;  it must be some objective factor external to the defense. *Hartman v. Bagley,* 492 F.3d 347, 358 (6th Cir. 2007); *Murray v. Carrier*, 477 U.S. 478 (1986).  If Erkins and his attorney did not know about the single photograph incident until the cross-examination of Michael Weisbrod (and the record supports that conclusion), there is no way they could have filed a motion to suppress.

However, the opinion of a state court on plain error review is still entitled to AEDPA deference if the federal court reaches the merits despite the procedural default.  *Fleming v.*

*Metrish*, 556 F.3d 520, 532 (6th Cir. 2009); *Kittka v. Franks*, 539 Fed. Appx. 668, 672 (6th Cir.

2013); *Bond v. McQuiggan*, 506 Fed. Appx. 493, 498 n. 2 (6th Cir. 2013); *Stojetz v. Ishee*, 2014

U.S. Dist. LEXIS 137501, *231 (S.D. Ohio Sept. 24, 2014)(Frost, J.).

The First District rejected Erkins' claim that the State was obliged to use the procedure

for identification provided in Ohio Revised Code § 2933.83 because that procedure applies only

to live lineups or photo lineups, which did not occur here.  Of course the procedure adopted by

that statute is not compelled by the Constitution, so omission of that procedure is not a basis for

habeas relief.

Similarly the First District reasonably rejected Erkins claim that suppression was required

because Weisbrod had seen Hoover, Ojile, and Erkins on the TV news at the time of their arrest.

However suggestive that may have been, the display of the pictures was not state action.

Erkins says he wishes to rebut the First District's finding that Weisbrod identified him

from the news reports (Reply, Doc. No. 11, PageID 1884).  However, that was Weisbrod's

testimony.  Specifically and at the places Erkins cites in the transcript, Weisbrod testified the

police did not ask him to identify Erkins (or Ojile or Hoover) from any photographs when they

contacted him shortly after the arrest.

About two weeks before trial and as Weisbrod was preparing for trial with the state's trial

attorney, Mr. Gibson showed him a single photograph of each of the defendants and said these

were the people who were going to be on trial.  Gibson did not ask Weisbrod to make an

identification at that time and Weisbrod did not volunteer one.  Instead, Weisbrod had told

Gibson he had seen the news articles about the arrest and had seen the accompanying

photographs and recognized the people who had robbed him before he was shown the pictures.

Erkins claims this shows a clear due process violation (Reply, Doc. No. 11, PageID

1886).  He first asserts that under Supreme Court precedent a court must follow a two-step process to determine whether an identification is admissible. *Id.* citing *United States v. Crozier,* 259 F.3d 503, 510 (6th Cir. 2001).  First it must determine whether the identification procedure is suggestive.  *Id.*  Even if it is, the identification is still admissible if, under the totality of the circumstances, it is still reliable. *Id.*

Erkins argues there were three impermissibly suggestive identification procedures used in this case:  the news report, the single photograph, and the in-court identification where he and his co-defendant Ojile were the only black males present in the room and both were in handcuffs (Reply, Doc. No. 11, PageID 1887).

The First District correctly found that because there was no state action involved in presenting the news reports to Weisbrod, his having seen those images, however suggestive they were to him, does not satisfy the first prong of the test.  Erkins points to no law to the contrary.

With respect to the in-court identification, which occurred by video, the case law does not apply.  It is true that the in-court situation is inherently suggestive because of where a defendant is seated.  But it happens frequently that, in a case where there has been no pre-trial identification procedure, a witness is called to the stand and asked if the person who offended against him is present.  Under those circumstances, there is no basis under the Fourteenth Amendment to suppress an identification of the defendant just because he happens to be the only person seated at the defense table who is not wearing identifiable lawyer's clothing.  Furthermore, defense counsel raised no objection based on the suggestiveness of the courtroom situation.

The presentation of the single photograph is a much closer question.  Although Weisbrod was not asked to make an identification on that occasion and did not volunteer one, seeing the photographs of the persons to be tried would probably have reinforced the prior identification he

made from the news reports.  However, Erkins cites no law critical of this procedure.

Nevertheless, even if Erkins had prevailed in obtaining a finding that the single photograph procedure was impermissibly suggestive, the First District would still be on solid ground in finding the in-court identification reliable.  Without citing *Neil v. Biggers*, 409 U.S. 188 (1972), it applied the correct reliability tests adopted in that case and reinforced in *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977), which it did cite.  It found that the place where the second armed robbery occurred was well-lit and Weisbrod had a good opportunity to observe the faces of the robbers.  *State v. Erkins, supra*, ¶ 64.  He told the investigating officers he thought he would be able to recognize them and he did so at once when he saw the news reports.  *Id.*

Erkins makes a lengthy argument responding to each of the factors in the *Biggers* test (Reply, Doc. No. 11, PageID 1888-92).  His arguments go rather to the weight Judge Allen should have given to the in-court identification, rather than to whether it should have been admitted at all.  At most points, he takes issue with the First District's factual findings, e.g. about whether the area of the robbery was well-lit.  But Weisbrod testified it was well-lit, which is sufficient to meet the legal test in the absence of some evidence that it was not so.  Instead, he simply asserts the robbery happened "under poor lighting conditions."  *Id.*  at PageID 1888.  Similarly he asserts Weisbrod would not have paid much attention because there were two attackers and he could not describe the attackers with any detail (nothing beyond two African-American males of medium build) or what each of them did during the robbery.  *Id.*  Again, these arguments all go to weight, not admissibility

Ultimately, Erkins has not shown that the First District's application of Supreme Court precedent was unreasonable.  The Second Ground for Relief should therefore be dismissed with prejudice.

**Ground Three:  Changing a Journalized Verdict**

In his Third Ground for Relief, Erkins alleges he was deprived of due process of law when Judge Allen changed her finding on Counts 22, 28, and 29 of Case No. B-1007149 from guilty of conspiracy to commit robbery to guilty of complicity to robbery, changing an "already journalized verdict." (Petition, Doc. No. 1, PageID 8).  Erkins argues in his Reply that this violated his rights under the Double Jeopardy Clause (Reply, Doc. No. 11, PageID 1893.)

The Warden states this claim was preserved for merits review in habeas corpus. (Return, Doc. No. 6, PageID 37).  This Court, however, disagrees and finds Erkins made no fair presentation of any federal constitutional claim in this regard on direct appeal.  Erkins argument on appeal on his Sixth Assignment of Error reads in its entirety as follows:

> **SIXTH ASSIGNMENT OF ERROR**
>
> The trial court erred to the prejudice of Defendant-Appellant by changing its verdict.
>
> **ISSUE PRESENTED FOR REVIEW AND ARGUMENT**
>
> The trial court cannot change its verdict once journalized.
>
> In State v. Lyons. (March 30, 2012), Hamilton App. No. C-110136, unreported, this Court, in following the Ohio Supreme Court in State v. Green (Ohio 1998), 81 Ohio St. 3d l00, 689 N.E.2d 556, held that a finding of guilty must be properly journalized to constitute a valid conviction.
>
> In the case at bar, the trial court announced its verdict in open court. In Case No. B-1007149-B, it stated that Mr. Erkins was guilty of conspiracy to commit robbery in Counts 22, 28, and 29, (T.p. 1441-1442). That finding was journalized on August 25, 2011. (T.d. 68). The trial court then attempted to change the verdict to complicity for those 3 counts. (T.p. 1466-1467).  This was impermissible and the convictions for conspiracy to commit

robbery should have been final. In accordance, these counts would have all been felonies of the third degree in accordance with R.C. Section 2923.01(1). However, the analysis does not end there.

Mr. Erkins was not indicted for conspiracy in Counts 22, 28, and 29. Unlike the complicity statute, R.C. Section 2923.03(F) which provides that a defendant may be convicted of complicity in an offense even though he was indicted as the principal offender, there is no such language in the conspiracy statute, R.C. Section 2923.01. Therefore, as Mr. Erkins was convicted of an offense for which he was never indicted, such convictions in Counts 22, 28, and 29 must be vacated, and the sentences for those Counts vacated as well.

(Brief of Defendant-Appellant, Doc. No. 6-1, PageID 126-27.)  There is no reference whatsoever to the United States Constitution in this argument.

On the Sixth Assignment of Error, the First District held:

### VI. Trial Court's Correction of Clerical Error

 [*P59]  In his sixth assignment of error, Erkins contends that the trial court erred by changing its verdict. He argues that the trial court originally convicted him of three counts of conspiracy to commit robbery, offenses for which he was not indicted, and later improperly changed the verdicts to complicity to robbery. This assignment of error is not well taken.

 [*P60]  The record shows that the trial court incorrectly stated in its original judgment entry that it was convicting Erkins of three counts of conspiracy to commit robbery, crimes for which he was not charged. The trial court subsequently realized its mistake and journalized an entry nunc pro tunc stating that he had been convicted of three counts of complicity to robbery, which were the correct offenses. The court did not change its verdict. It simply corrected a clerical error, which is permissible under Crim.R. 36. *State v. Valdez*, 5th Dist. No. 05-CA-00094, 2006 Ohio 3298, ¶ 88-92;  *Lattimore*, 2002 Ohio 723, 2002 Ohio App. LEXIS 731, at *5-6. Consequently, we overrule Erkins's sixth assignment of error.

*State v. Erkins*, 2012-Ohio-5372, 2012 Ohio App. LEXIS  4712 (1st Dist. Nov. 21, 2012).

Nothing in this decision suggests the First District believed it was considering a federal constitutional claim.

A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material that will alert it to the presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27 (2004).  When a defendant does so little to present his claim that it has not been fairly presented, then the presumption under *Harrington v. Richter* that the state court decided the claim on the merits is "fully rebutted." *Johnson v. Williams*, 568 U.S. ___, 133 S. Ct. 1088, *; 185 L. Ed. 2d 105 (2013).  The Court concludes Erkins did not fairly present a Double Jeopardy claim to the First District and has therefore procedurally defaulted on that claim.

Alternatively, the Magistrate Judge offers the following analysis on the merits of the Double Jeopardy claim.

Erkins asserts the First District's conclusion on his Sixth Assignment of Error is both an unreasonable application of clearly established federal law and an unreasonable determination of the facts in light of the evidence (Reply, Doc. No. 11, PageID 1893).  The Court deals first with the factual determination.

In Count 22 of Case No. B-1007149, the grand jury charged Erkins and Ojile with aggravated robbery of Alan Boogher on September 7, 2010 (Indictment, Return of Writ, Doc. No. 6-1, Ex. 2, PageID 71).  In Count 28 they were charged with aggravated robbery of Michael Li on October 6, 2010.  *Id.*  at PageID 74.  In Count 29 they were charged with aggravated robbery of Tony Quach on October 6, 2010.  All counts were charged as violations of Ohio Revised Code § 2911.01(A)(1).

After trying the case from May 12, 2011, to June 2, 2011, Judge Allen announced her decision on August 2, 2011, in open court (Trial Tr., Doc. No. 10-1, PageID 1801-1812).  The transcript reads as follows:

> Count 22, the charge is robbery.  Both Defendant Erkins and Ojile are guilty of conspiracy to commit robbery.
>
> Count 28, the charge is robbery.  Both Defendant Erkins and Defendant Ojile are guilty of conspiracy to commit robbery.
>
> Count 29, the charge is robbery. Both Defendant Erkins and Ojile are guilty of conspiracy to commit robbery.

*Id.* at PageID 1806-07. Judge Allen's original Finding After Court Trial finds Erkins guilty of aggravated robbery on Counts 22, 28, and 29 of Case No. B-1007149 (Return of Writ, Doc. No. 6-1, PageID 91, filed August 23, 2011).  No mention is made of "conspiracy."

On September 22, 2011, Judge Allen set the case down for hearing "because I have to correct the record as to what my findings are." (Trial Tr., Doc. No. 10-2,  PageID 1817.)  She noted that "[t]here has not been a conviction, therefore, no official conviction until the date of sentencing."  *Id.*  Judge Allen then stated:

> Well, in due deference, because I'm about to even make findings that are somewhat different than what I said originally, and that is because I was thinking certain things in my head but wrote out an incorrect section of the code. And because I also reviewed and did reconsider evidence and did make different -- I'm going to make different findings. I'm gonna review what you both said. I will consider what you're saying.
>
> As to these corrected and amended charges also, I will do another review based on what you have raised. But as to State of Ohio vs. Kenyatta Erkins it's now amended and corrected that the findings are Count 11, guilty of aggravated robbery; Count 17, guilty of aggravated robbery; Count 19, guilty of aggravated robbery; Count 22, guilty of complicity to robbery, because I was saying in my statement that they conspired to commit or attempted to commit certain offenses, but that is sufficient for complicity; Count 26, aggravated robbery; Count 28, complicity to robbery; and Count 29, complicity to robbery.

*Id.* at PageID 1833-34. The Amended Finding After Court Trial, approved September 22, 2011, and entered September 27, 2011, also does not mention "conspiracy," but reads that Erkins is

found guilty of complicity to robbery on Counts 22, 28, and 29 (Return, Doc. No. 6-1, Ex. 12, PageID 93).

Thus Erkins is clearly wrong when he asserts "[t]he judgment entry filed on B1007149 indicated the same, a conspiracy conviction."  (Reply, Doc. No. 11, PageID 1895.)  Judgment was not entered until October 17, 2011, and reflects convictions for complicity to robbery on Counts 22, 28, and 29  (Return, Doc. No. 6-1, Ex. 14, PageID 97).

Based on these record facts, the First District decided "[t]he court did not change its verdict. It simply corrected a clerical error, which is permissible under Crim.R. 36. *State v. Valdez*, 5th Dist. No. 05-CA-00094, 2006 Ohio 3298, ¶ 88-92; [*State v.*] *Lattimore*, 2002 Ohio 723, 2002 Ohio App. LEXIS 731, at *5-6*." *State v. Erkins*, 2012-Ohio-5372, ¶ 60, 2012 Ohio App. LEXIS  4712 (1st Dist. Nov. 21, 2012).

This is not an unreasonable determination of the facts based on the record.  Although Judge Allen said the word "conspiracy," she corrected herself to say that she had meant "complicity."  That is a reasonable reading of her words in August "I was thinking certain things in my head but wrote out an incorrect section of the code."

Having found that Judge Allen made a clerical error, the First District proceeded to decide she was legally empowered to correct it.  Erkins argues at length in is Reply that this is in error under Ohio law (Reply, Doc. No. 11, PageID 1895-96, citing, *inter alia, State ex rel Cruzado v. Zaleski*, 111 Ohio St. 3d 353 (2006)).  Whether or not Ohio law, particularly Ohio R. Crim. P. 36, permits a correction of an error of this sort is a question this habeas corpus court cannot consider.  Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13, 178 L. Ed. 2d 276 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v.*

*Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Furthermore, failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976).  "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

But Erkins also asserts the First District's decision is "contrary to clearly established Federal law as determined by the Supreme Court of the United States, . . ." (Reply, Doc. No. 11, PageID 1893.)  He relies first on the proposition that an acquittal protects a defendant against a second prosecution for the same act.  *Id.*  citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  *Pearce* does indeed support that proposition.  Erkins then argues:

> A verdict of "not guilty" is final, *Ball v. United States*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896) at 706. A "not guilty" verdict is final in a bench trial as well regardless of whether the judgment was entered, *Kepner v. United States*, 195 U.S. 100, 130,24 S.Ct 797, 49 L.Ed. 114 (1904).

In *Ball*, three defendants were charged with murder in federal court.  At trial a jury found two defendants guilty and acquitted the third.  On appeal, the indictment was ordered quashed. However, the grand jury returned a new indictment on all three defendants and a petit jury found

all three guilty.  The Supreme Court found that retrial of the defendant who had been formally acquitted was barred by the Double Jeopardy Clause.  The Clause did not bar retrial of the other two defendants because they had procured the order quashing the indictment on appeal.

In *Kepner*, the Supreme Court interpreted a Congressional statute extending double jeopardy protection to the Philippine Islands, then an American territory by virtue of the treaty with Spain ending the Spanish-American War.  Kepner, an attorney, was charged with embezzlement of client funds and convicted in a bench trial, Congress having refused to extend trial by jury to the Philippines.  He was acquitted at trial and a judgment entered to that effect. The Supreme Court of the Philippines, however, reversed the judgment, found Kepner guilty, and sentenced him.  The Supreme Court noted that under prior Spanish law, a person was not in jeopardy "until there had been a final judgment in the court of last resort."  195 U.S. at 121.  The Court found that Congress had intended that double jeopardy in the Philippines under American rule should have the same meaning as in the territorial United States.  *Id.*  at 125-28.  The fact that trial was not to a jury was held not to be material, so long as a judgment of acquittal had been entered.  *Id.*  at 128-29.  Further, the fact that a jury had returned a verdict was also a bar to a second prosecution, even though no judgment had entered.  *Id.*  at 130.[3]

The First District's conclusion is not contrary to either of these Supreme Court decisions or any others known to the Magistrate Judge.  The word "verdict" as used in American jurisprudence refers to a conclusion reached by a jury.  See Ohio R. Crim. P. 31; Fed. R. Crim. P. 31.  Conclusions as to guilt or innocence in a bench trial are called "findings."  In Ohio law, the trial judge must make a general finding, i.e., guilty or not guilty.  Ohio R. Crim. P. 23(C).  In federal law the same is true, except that a party may request separate findings of fact.  Fed. R. Crim. P.  23(c).  In a case tried to a jury, the verdict must be unanimous, in writing, signed by all

---

[3] The decision was a close one.  Justices Holmes, Brown, White, and McKenna dissented.

the jurors, and returned by the jury to the judge in open court. Ohio R. Crim. P. 31(A). The jury may have reached different tentative conclusions before returning their verdict in court, but those take place in the secrecy of the jury room. What counts is what is announced in open court and embodied in a verdict which is accepted and filed. Furthermore, another step may intervene. Once a verdict is returned "and before it is accepted the jury shall be polled at the request of any party or upon the court's own motion." If it turns out on the poll that the verdict is not unanimous, even though the jury foreman announced a unanimous verdict, then the jury is sent back for further deliberations or it may be discharged. Ohio R. Crim. P. 23(D). When the jury is discharged, a mistrial is declared and the Double Jeopardy Clause does not prevent a defendant from being tried again, regardless of what the foreman read as the jury's verdict.

In a bench trial, the judge makes findings and does not "render a verdict." But a judge's findings in a bench trial are the written findings which are journalized, not the oral announcement in open court. Under Ohio law, "[a] court of record speaks only through its journal and not by oral pronouncement." *Schenley v. Kauth*, 160 Ohio St. 109 (1953)(syllabus).

An argument similar to that made by Erkins was rejected by the Supreme Court just two terms ago. In *Blueford v. Arkansas*, 566 U.S. ___, 132 S. Ct. 2044, 182 L. Ed. 2d 937 (2012), the court decided that a jury's report in open court that it had decided against capital and first degree murder but was deadlocked on manslaughter did not preclude a mistrial and retrial on those two charges when the jury hung somewhat later. A report of where deliberations stand is not a verdict; juries can reconsider prior votes.

In sum, the Third Ground for Relief should be dismissed with prejudice because it is procedurally defaulted for lack of fair presentation; alternatively, it is without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.

Because of the length of the pleadings in this case and the fact that the parties have not explicitly addressed the question, the Magistrate Judge makes no recommendation at this point on whether a certificate of appealability should issue on any of Erkins' claims.  If Erkins files objections to this Report, he is ordered to include any argument he wishes the Court to consider on a certificate of appealability.

All further filings in this case by either party must comply with the Magistrate Judge's Standing Order[4] requiring all record references to include the Page Identification Number.  Non-complying filings will be stricken.

December 5, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected

---

[4] The Standing Orders of each Judge of this Court are available by link from that Judge's page on the Court's internet website, www.ohsd.uscourts.gov.

to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).