# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KENYATTA ERKINS,

           Petitioner,    :    Case No. 1:14-cv-410

  - vs -                      District Judge Susan J. Dlott
                                  Magistrate Judge Michael R. Merz

MICK R. OPPY, Warden, Correctional
 Reception Center,

                                        :

           Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 19)[1] to the Magistrate Judge's Report and Recommendations (the "Report," ECF No. 16). District Judge Dlott has recommitted the case for reconsideration in light of the Objections (ECF No. 20).

This case was brought *pro se* by Petitioner Kenyatta Erkins to obtain relief from his convictions on robbery related offenses in the Hamilton County Common Pleas Court and his consequent sentence to imprisonment in Respondent's custody (Petition, ECF No. 1, PageID 1, ¶¶ 1, 3, 5).[2]  He pleads the following grounds for relief:

> **Ground One:** Erkins convictions are based on insufficient evidence.
>
> **Supporting Facts:** Erkins was convicted on all counts when the evidence was insufficient to sustain the conviction.

---

[1] This Court has been accustomed to cite to federal court records by document number ("Doc. No.")  However, the new 20th edition of the Bluebook prescribes use of "ECF No."  A Uniform System of Citation, Rule 10.8.3 (20th ed. 2015).

1

>**Ground Two:** Due Process violation in use of an impermissible suggestive identification procedure.
>
>**Supporting Facts:** Prosecutor presented a single photograph of defendant to victim two weeks before trial stating "These are the guys up for trial" and prior to that there was no prior line-up presented to victim in which victim had already identified defendant.
>
>**Ground Three**: Due Process violation for trial court changing already journalized verdict.
>
>**Supporting Facts:** Trial court changed its verdict after announcing verdict & journalizing exactly what was announced. The record showed that it was not a clerical error but simply an error in the trial judge's judgment.

(Petition, ECF No. 1, PageID 5, 7, 8.)  The Report recommends dismissing the Petition with prejudice, but postponed a recommendation on a certificate of appealability pending expected objections (Report, ECF No. 16, PageID 2009).

## Analysis

**Ground One:  Conviction upon Insufficient Evidence**

Erkins claims in his First Ground for Relief that he was convicted on insufficient evidence.  The Report separates the convictions on various counts for separate analysis and Erkins has structured his Objections using that framework.  The Report noted that the governing standard is found in *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970), and Erkins does not disagree.  Instead he argues the State's evidence does not meet the *Jackson* standard.

**Subclaim One: Count 2 of Case No. B-1006797 (Robbery of Victim Kyle Ingram)[3]**

The background facts for this and the other convictions of Erkins and his co-defendant, as found by the First District Court of Appeals, are quoted verbatim in the Report (ECF No. 16, PageID 1985-88, quoting *State v. Erkins*, 2012-Ohio-5372, ¶¶ 2-7, 40-45, 47, 2012 Ohio App. LEXIS 4712 (1st Dist. Nov. 21, 2012))[4] and are not repeated here.

Ingram is a police officer who was assisting other officers in their investigation of Erkins' and Ojile's casino robbery scheme. He fit the profile of other victims and was followed by Erkins and Ojile when he left the casino in Indiana. They followed him off the interstate highway and were arrested before actually confronting Ingram. The Report concluded that the First District's decision was not an objectively unreasonable application of *Jackson v. Virginia*, because, although the robbery was not completed, "they [Erkins and Ojile] took a number of substantial steps in the process: targeting him [Ingram] in the casino, following him a considerable distance on the highway, exiting when he did, and equipping themselves with the tools for committing an armed robbery." Under Ohio law, which follows the Model Penal Code on this point, a punishable attempt to commit robbery occurs when an offender "purposely does or omits to do anything which is an act of omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *State v. Erkins, supra*, ¶ 44.

Erkins' argument in his Objections is that his actions and those of Ojile never ripened into a true robbery (Objections, ECF No. 19, PageID 2022-24). He asserts that at most he is guilty of an attempted robbery which involves a different statute from the robbery charge. *Id.* at

---

[3] For reasons he does not disclose, Erkins argues this subclaim out of order (Objections, ECF No. 19, PageID 2021-24).
[4] References herein to *State v. Erkins, supra*, are to this opinion.

PageID 2023.

Erkins' conviction on this count is under Ohio Revised Code § 2911.02(A)(1) and the First District noted that under that statute, an attempt is prohibited. *State v. Erkins, supra*, ¶ 44, relying on *State v. Woods,* 48 Ohio St. 2d 127 (1976).  Erkins objects that the First District misinterpreted *Woods*.  For reasons stated in the Report, the Magistrate Judge finds the First District's analysis of *Woods* persuasive, but that is really beside the point.  It is purely a question of state law what acts constitute the elements of the Ohio crimes involved here and this Court does not sit in habeas corpus to decide whether the Ohio appeals court got the Ohio law right. Nothing in the Fourteenth Amendment jurisprudence provides that a State cannot interrupt what was about to become a completed robbery and punish the attempt.

The Magistrate Judge did not make a recommendation in the Report on whether a certificate of appealability should issue on any of Erkins' claims, but noted

> Because of the length of the pleadings in this case and the fact that the parties have not explicitly addressed the question, the Magistrate Judge makes no recommendation at this point on whether a certificate of appealability should issue on any of Erkins' claims. If Erkins files objections to this Report, he is ordered to include any argument he wishes the Court to consider on a certificate of appealability.

(ECF No. 16, PageID 2009).  The Court has an obligation to decide the certificate of appealability question in any final judgment denying a habeas petition.  Rule 11, Rules Governing § 2254 Cases.

In his Objections, Erkins asserts the Magistrate Judge's conclusion on Subclaim One is debatable among reasonable jurists, but he makes no argument for that position, instead offering a conclusory citation to *Slack v. McDaniel,* 529 U.S. 473 (2000).  While that case sets the standard for a certificate of appealability, Erkins has offered no argument about how it applies

4

here, i.e., he cites no cases in which reasonable jurists take the position for which he contends.

**Subclaim Two: Counts 22, 28, and 29 of Case No. B-1007149 (Complicity as to Victims Alan Boogher, Michael Li, and Tony Quach**

With respect to these three victims, the Report's analysis is much the same as with Subclaim One: Ojile and Erkins targeted these potential victims and had taken active steps to carry out the robberies, but were prevented from completing them (Report, ECF No. 16, PageID 1989-90). Erkins objects that there is no evidence of *mens rea* (Objections, ECF No. 19, PageID 2016), but makes no comment on the point made in the Report that the police were intercepting cellphone conversations between Erkins and Ojile which readily show intent to rob (Report, ECF No. 16, PageID 1990).

Erkins objects that "[t]here was not a scintilla of evidence to establish that petitioner had a weapon on or about his persons [sic] at the time he was alleged to have been following these individuals because he was never stopped, searched, or questioned on any of these instances." (Objections, ECF No. 19, PageID 2019.) However, there was no need to prove the use of a weapon because, as Erkins admitted on appeal, the State amended these counts from aggravated robbery to robbery at the close of the State's case (Appellant's Brief, Return of Writ, ECF No. 6-1, PageID 107).

Erkins makes no certificate of appealability argument on this subclaim.

**Subclaim Three: Count 3 of Case No. B-1006797 First Aggravated Robbery of Michael Weisbrod**

No further analysis is required on this subclaim beyond what is set forth in the Report

5

(ECF No. 16, PageID 1990-91).

**Subclaim Four: Count 11 of Case No. B-1007149 (Second Robbery of Michael Weisbrod)**

No further analysis is required on this subclaim beyond what is set forth in the Report (ECF No. 16, PageID 1991-92).

**Subclaim Five: Counts 17 and 19 of Case No. B-1006797 (Robberies of Bovang Eab and Sitangshu Das)**

No further analysis is required on this subclaim beyond what is set forth in the Report (ECF No. 16, PageID 1992-94).

**Subclaim Six: Count 26 of Case No. B-1007149 (Robbery of Kiran Racherla)**

No further analysis is required on this subclaim beyond what is set forth in the Report (ECF No. 16, PageID 1994-95), except to note that the transcript reference given by Erkins to supposedly meet his burden of proving by clear and convincing evidence that the First District was wrong on a fact finding refers the Court to a reference that does not exist.  Erkins references "Trial Tr., Return of Writ, Doc. No, 9-3, PageID 1487-88."  Docket No. 9-3 actually covers PageID 1055 to 1159.

**Ground Two:  Use of an Impermissibly Suggestive Identification Procedure**

In his Second Ground for Relief, Erkins argues that the prosecutor's presentation of a single photograph of each of the co-defendants to victim Michael Weisbrod constituted an impermissibly suggestive identification procedure.

The Report rejects the Warden's assertion of a procedural default defense to this claim (ECF No. 16, PageID 1997). However, the Report did conclude on the merits that the First District's rejection of this assignment of error was neither contrary to nor an objectively unreasonable application of the relevant U.S. Supreme Court precedent. *Id.* at PageID 1999-2000.

In his Reply, Erkins argued that the State had used an impermissibly suggestive procedure to obtain an identification of him from Weisbrod, to wit, display of a photograph of him to Weisbrod by Mr. Gibson, the State's trial attorney, about two weeks before the trial (Reply, ECF No. 11, PageID 1884-86). Erkins quoted from the trial testimony and the Report summarized that testimony as follows:

> About two weeks before trial and as Weisbrod was preparing for trial with the state's trial attorney, Mr. Gibson showed him a single photograph of each of the defendants and said these were the people who were going to be on trial. Gibson did not ask Weisbrod to make an identification at that time and **Weisbrod did not volunteer one** (emphasis added). Instead, Weisbrod had told Gibson he had seen the news articles about the arrest and had seen the accompanying photographs and recognized the people who had robbed him before he was shown the pictures.

(ECF No. 16, PageID 1998.)

Erkins notes the contradiction between this finding and the finding of the Magistrate Judge in co-defendant Ojile's case: "Weisbrod also testified that about two weeks before trial the prosecutor, Mr. Gibson, showed him single photographs of the three co-defendants who were going to be on trial and he volunteered that he recognized Erkins and Ojile." *Ojile v. Oppy,* 2014

7

U.S. Dist. LEXIS 166961 (S.D. Ohio Dec. 2, 2014).  These two findings are contradictory and resolving the contradiction requires quoting the testimony at length.  The cross-examination of Mr. Weisbrod by Erkins' counsel, Mr. Carl Lewis, begins on page 561 of the trial transcript (ECF No. 8-4. PageID 910).  At PageID 912 the following examination occurs:

> Q. All right. So after you learned that Kenyatta Erkins, Mr. Ojile and Amy Hoover were arrested for these offenses, how did you come to know that they were arrested?
>
> A. It's one of those images that just gets burned in your brain.
>
> Q. Okay. That may be, but how did you know, was it a news report?
>
> A. Yes.
>
> Q. Television?
>
> A. A friend had linked me to a news report.
>
> Q. A friend linked you to a news report. Did you contact the Cincinnati Police?
>
> A. No, I did not.
>
> Q. This image that was burned into your mind after you were told by a friend that three individuals had been apprehended, you didn't immediately pick up the phone and say, hey, that's the guy or the those are the individuals that robbed me?
>
> A. No, I did not. I believe at the moment I was in Las Vegas.
>
> Q. Okay. That wouldn't have prohibited you from making a phone call.
>
> A. Okay. When I returned home I remember the officer, several officers had stopped by, or at least Detective Kinney had stopped by.
>
> Q. You were still in Cincinnati, correct, living in Cincinnati?
>
> A. Yes.

Q. So if I understand you correctly, when you did return, you had communications with Cincinnati law enforcement?

A. That is correct.

Q. Do you remember the first time someone contacted you, you communicated with someone after you had this image burned into your mind?

A. Could you please further clarify?

Q. Did any law enforcement Officer share a photograph of Kenyatta Erkins, Mr. Ojile or Ms. Hoover with you after they were apprehended?

A. I don't believe so.

Q. Do you know? Yes or no?

A. I don't believe so.

Q. That image is very, very significant to you because these individuals, as you testified, robbed you, correct?

A. Correct.

Q. You remember when your friend told you that, hey, let me show you a new link, they've apprehended three individuals, you said you were certain, correct?

A. Correct.

Q. Now, you're not certain if you ever saw those photographs of any of these three individuals by a law enforcement officer?

A. That is correct.

Q. Never did a photo lineup of any of these individuals?

A. No.

Q. Has any officer shared with you a photograph of Kenyatta Erkins?

A. No. Well, yes. I had a – what was that, two weeks ago, I had met with Mr. Gibson and he showed me photographs.

9

Q. Okay. And where did he show you those photographs?

A. In downtown Cincinnati, in the law building.

Q. Yes, sir. So you were in Cincinnati?

A. That is correct.

Q. And Rick Gibson of the Hamilton County prosecutor, that was questioning you earlier [i.e. during trial], showed you a photograph of Kenyatta Erkins?

A. Correct.

Q. Showed you a photograph of Mr. Ojile?

A. Correct.

Q. Showed you a photograph of Ms. Hoover?

A. Correct.

Q. Was the photographs independent of any other photos?

A. Yeah, they were just single photos.

Q. And what did Mr. Gibson tell you?

A. Nothing. He just showed me the photos from the case, and I proceeded to tell him those were the people that I had recognized.

Q. And he didn't ask you, are these the individuals that robbed you?

A. No.

Q. He just showed you three pictures?

A. I mean, he said these are the people up for trial, and I had stated that, yeah, those were them.

Q. Okay.

A. He didn't ask me directly.

10

*Id.* at PageID 913-16. The correct characterization of what happened here is that Weisbrod did volunteer the identification. That is, according to Weisbrod's testimony, Gibson did not ask him to make an identification, but he made one anyway. The conclusion in the Report that Weisbrod did not volunteer an identification on the occasion of his meeting with Gibson is in error and is hereby withdrawn.

On direct appeal, Erkins urged as his seventh assignment of error that Weisbrod's in-court identification of him "was the result of unduly suggestive pretrial techniques used by the state and that the identification was not reliable." *State v. Erkins, supra*, ¶ 61. The First District heard Erkins to be complaining of the fact that Weisbrod had seen him in news reports. *Id.* at ¶ 64. In arguing the Seventh Assignment of Error on appeal, Erkins' counsel only argued that the in-court identification should not have been allowed because the prosecutor never used the procedure required by Ohio Revised Code § 2933.83 to avoid suggestiveness (Appellant's Brief, Return of Writ, ECF No. 6-1, PageID 128).

In rejecting the seventh assignment of error, the First District found the statute was inapplicable and there was no state action involved in the appearance of the pictures on television. It noted that he testified he got a good look at the robbers on the second robbery. It concluded

> Generally, a trial court must suppress a pretrial identification of a suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the circumstances. *State v. Waddy*, 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992); *State v. Bell*, 1st Dist. No. C-030726, 2004 Ohio 3621, ¶ 16. The defendant bears the burden of proving both prongs of the test. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Smith*, 1st Dist. Nos. C-080712 and C-090505, 2009 Ohio 6932, ¶ 16. Suggestive identification procedures are unreliable if they create a substantial likelihood of misidentification. *Waddy* at 439; *Smith* at ¶ 16.

*State v. Erkins, supra,* ¶ 65. Although the court did not specifically advert to the photograph presentation during Gibson's pretrial witness preparation, it must be held to have considered it because that claim was presented in the Brief as noted above. *Harrington v. Richter*, 562 U.S. 86 (2011). Given the television exposure which involved no state action and the fact that the second robbery occurred in a well-lit area, the First District concluded there was no likelihood of misidentification. Erkins has not shown this is an objectively unreasonable application of *Neil v. Biggers*, 409 U.S. 188 (1972), or *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

**Ground Three: Changing a Journalized Verdict**

In his Third Ground for Relief, Erkins alleges he was deprived of due process of law when Judge Allen changed her finding on Counts 22, 28, and 29 of Case No. B-1007149 from guilty of conspiracy to commit robbery to guilty of complicity to robbery, changing an "already journalized verdict." (Petition, ECF No. 1, PageID 8.) Erkins argued in his Reply that this violated his rights under the Double Jeopardy Clause (Reply, ECF No. 11, PageID 1893).

The Report concluded this claim was procedurally defaulted because it was never fairly presented to the Ohio courts as a federal constitutional claim (Report, ECF No. 16, PageID 2001-003). Alternatively, the Report concluded the claim was without merit. *Id.* at PageID 2003-008.

Erkins objects that the Magistrate Judge should not have raised the procedural default question *sua sponte* (Objections, ECF No. 19, PageID 2036, citing *Day v. McDonough*, 547 U.S. 198 (2006)). In *McDonough* the Supreme Court upheld a district court's raising a statute of limitations defense *sua sponte* even though the State had omitted the defense in its answer. Thus *McDonough* supports rather than undercuts the raising of the defense *sua sponte*. Indeed, the

Supreme Court in *McDonough* cited approvingly the Sixth Circuit's allowance of raising the defense *sua sponte*. *Id.* at 206-07, citing *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004).

On the merits, Erkins claims that the First District's decision on this claim was both based on an unreasonable determination of the facts in light of the evidence (28 U.S.C. § 2254(d)(2)) and an objectively unreasonable application of the relevant U.S. Supreme Court case law (28 U.S.C. § 2254(d)(1)).

The Report analyzes the § 2254(d)(2) claim at length (ECF No. 16, PageID 2003-006) and the § 2254(d)(1) claim separately (ECF No. 16, PageID 2006-008). Having reviewed that analysis in light of Erkins' Objections, the Magistrate Judge concludes that little additional analysis is needed. This case was tried to the bench, obviously with Erkins' consent. After hearing all the evidence, Judge Allen announced a "finding" which she later amended before a judgment was entered. Erkins' claim treats bench trial findings as the equivalent of a jury verdict. For reasons given at length in the Report, those two acts – a judicial finding not yet embodied in a judgment and a jury verdict – are not equivalent for Double Jeopardy purposes.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*, with two exceptions. First of all, the issue of whether Mr. Gibson's display of photographs of all

three Defendants to Michael Weisbrod was unduly suggestive is very fact dependent and reasonable jurists could disagree with the Magistrate Judge's conclusion. Secondly, the Third Ground for Relief presents sufficiently unusual facts that reasonable jurists might disagree on its resolution. Erkins should therefore be granted a certificate of appealability on these two issues.

July 28, 2015.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).